DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Old Reliable Wholesale, Inc., ) | |
| ) | CASE NO. 5:06 CV 2389 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Cornell Corporation, ) | |
| ) | (Claim Construction Order) |
| Defendant(s). ) | |
| ) | |

### **I. INTRODUCTION**

In this patent infringement action, plaintiff alleges that certain products manufactured and/or sold by defendant infringe U.S. Patent No. 5,069,950 ("the '950 Patent"). Defendant alleges that the '950 Patent is invalid and that, when the claims are properly construed, its products do not infringe the patent. "Victory in an infringement suit requires a finding that the patent claim covers the alleged infringer's product or process, which in turn necessitates a determination of what the words in the claim mean." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996) (internal quotation marks and citation omitted). Deciding what the words in the claims mean "is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claim annexed to them." *Id*. at 384. Determining whether infringement occurred "is a question of fact, to be submitted to a jury." *Id*.

The Court is presently at the first step: construing the claim terms. This Memorandum Opinion is not intended to determine the question of infringement.

(5:06 CV 2389)

## II.  APPLICABLE LAW

In determining the meaning of claims and claim terms, the Court "begin[s] with an examination of the intrinsic evidence, i.e., the claims, the other portions of the written description, and the prosecution history (if any, and if in evidence)." *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003).  Dictionary definitions may also be consulted to establish ordinary meaning of the claim terms.  *Id*.  There is a " 'heavy presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art." *Id*. (citing *CCS Fitness Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  If necessary, the Court can also look to extrinsic evidence, but such evidence "may not be relied upon . . . to vary or contradict the clear meaning of terms in the claims."  *Id*. (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed Cir. 1995), *aff'd*, 517 U.S. 370 (1996)).

Although the written description of the patent, i.e., the specification, is helpful in determining the meaning of claim terms, this must be done only in light of two commonly-applied claim construction canons: "(a) one may not read a limitation into a claim from the written description, but (b) one may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.2d 1576, 1582 (Fed. Cir. 1996) (the specification "is the single best guide to the meaning of a disputed term").

(5:06 CV 2389)

Further, although the patent drawings may depict a particular embodiment of the patent, such preferred embodiment does not limit proper claim construction. *PrimaTek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003).

### III.  THE '950 PATENT AND THE DISPUTED CLAIM TERMS

The '950 Patent relates to an insulated roof board designed to allow air flow underneath the top layer.[1]  The best mode for carrying out the invention is described, in relevant part, as follows:[2]

> . . . This roofing assembly includes an insulated roofboard **10**, which is a composite structure comprising an insulated roofboard member **12** of rigid coherent lightweight insulating material, and a protective top layer **16**.
>
> \* \* \*
>
> Insulation member **12** is preferably rectangular in shape . . . . This insulation member comprises a main portion . . . and a top portion comprising a plurality of spaced blocks **14** above said main portion.  Blocks **14** are an integral part of insulation member **12**, i.e. they are either integrally formed with or integrally joined to insulation member **12**.  These blocks, which are dividers or separators, define therebetween a network of interconnected channels for horizontal venting of water vapor to the edges of the insulation member. . . . Thus blocks **14** define a plurality of parallel channels **15***a* extending in one direction and a second plurality or set of channels **15***b* extending in a direction at right angles thereto.
>
> \* \* \*

---

[1] Plaintiff's product using this invention is the AJC Inventsabord.  Defendant asserts that its original Vent-Top ThermaCal product did the same job as plaintiff's product and that its current Vent-Top ThermaCal 1 product continues to do that job today.  As a result, defendant argues that the '950 Patent is invalid.  However, at the *Markman* phase of the litigation, construing the claims, not determining validity or invalidity, is the primary task.  Therefore, validity of the patent is an issue for another day.

[2] The patent's drawings are attached as Appendix A.

(5:06 CV 2389)

> . . . Board member **12** may be formed by cutting away portions thereof, as for example with a hot wire, to form the desired configuration of blocks and channels. . . . Alternatively, a plurality of blocks **14** may be formed separately and adhered to a rectangular solid block of the insulating material, as for example with an adhesive or by melting at the interface or by other known means.
>
> * * *
>
> The roofing assembly of this invention also includes a protective top layer **16**, which overlies the block **14** and channels **15a** and **15b** and is adhered to the top of the former along plane **14a**. The top layer **16** is preferably a relatively hard, dense protective layer. Top layer **16** protects the roof board member **12** from moisture and impact. . . .

('950 Patent 3: 12-16, 32-56; 4: 9-18, 45-51).

The disputed claim terms are all found in claim 1[3] which states:

> **1.** A composite insulated roof board structure comprising:
>
>   (a) an insulated roof board member comprising (1) a main portion of rigid coherent solid insulating material, and (2) a top portion comprising a plurality of spaced blocks above said main portion and *integral* therewith, said blocks defining therebetween a network of interconnected channels at the same level for horizontal venting of water vapor; and
>
>   (b) a relatively hard, dense protective top layer which is *adhered* to the tops of the blocks of said insulated roof board member.

('950 Patent 7: 25-29; 8: 1-7) (italics added to show disputed terms).

**A.  "Integral"**

Plaintiff argues that the term "integral" must be given the meaning found in the specification, that is, that the blocks **14** are "formed with or joined to" the insulation member **12**.

---

[3] Plaintiff alleges that defendant's ThermaCal 1 product reads on claims 1 <u>and</u> 2 of the '950 Patent, resulting in infringement. Like defendant's assertion of invalidity, the issue of infringement is for another day.

(5:06 CV 2389)

In other words, the blocks are either formed as part of the insulation member or formed separately and then joined to the insulation member.  Defendant argues that the term "integral" must be held to mean "being a part of and made of the same material."

The dictionary definition of the adjective "integral" is: "necessary to make a whole complete; essential or fundamental" and as "included as part of a whole rather than supplied separately."  *The Oxford Dictionary of English (revised edition)*. Ed. Catherine Soanes and Angus Stevenson. Oxford University Press, 2005.  The first definition suggests that plaintiff's interpretation of "integral" is correct; the second leans more toward defendant's.

It is important, however, to construe the claims in light of the specification.  In particular, the specification provides, as already noted above, that the board member "may be formed by cutting away portions thereof . . . to form the desired configuration of blocks and channels" or the blocks "may be formed separately and adhered to a rectangular solid block of the insulating material[.]" Whether the blocks forming the venting channels are carved out of the insulation material or formed separately and attached, they are an integral part of the patented invention, without which the invention would be meaningless and ineffective.  In other words, the blocks are "necessary," "essential," "fundamental," and "part of [the] whole" invention.  Without the blocks, the invention isn't the invention.

Defendant's interpretation that the blocks must be made from the same material as the insulation member improperly imports a limitation from the embodiment depicted in Figure 3. *See PrimaTek II*, *supra*, 318 F.3d at 1148.

5

(5:06 CV 2389)

Accordingly, the Court construes the term "integral" as meaning "formed with or joined to."

**B.  "Composite"**

Defendant asks the Court to construe "composite" primarily for purposes of contrasting the term "integral."  However, "composite" does not require construction.   In *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 2004), the court noted: "If . . . the body of the claim fully and intrinsically sets forth the complete invention, including all of its limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation."  Such is the case here.  The preamble to claim 1, where "composite" is found, adds nothing to the description of the invention claimed.  Therefore, "composite" need not be construed.[4]

**C.  "Adhered"**

Finally, plaintiff asks the Court to construe "adhered" according to its ordinary meaning of "attached."  Defendant would have the Court construe "adhered" as "to hold fast or stick by or as if by gluing, suction, grasping, or fusing," the ordinary dictionary definition.

---

[4] The noun "composite" is defined by *The Oxford Dictionary of English* as "made up of several parts or elements" or, with respect to constructional material, "made up of recognizable constituents."  This does not offer contrast to the construction of "integral."  In fact, it supports the construction given by the Court.  The claimed invention is a composite consisting of an insulation roof board member (which itself has components: a main portion, and a top portion consisting of blocks) and a hard protective top layer.

(5:06 CV 2389)

The Court concludes that plaintiff's suggested construction is the best because it does not limit "adhered" to the particular examples contained in the dictionary definition. In fact, the specification itself allows for attachment of components "with an adhesive or by melting at the interface or *by other known means*." (Patent 4: 17-18) (emphasis added). Therefore, defendant's proposed construction would actually insert new limitations into the claim without allowing for adhering "by other known means."

Accordingly, the Court construes the term "adhered" as meaning "attached."

### IV. CONCLUSION

In summary, the Court construes the challenged claim terms as follows:

<u>Integral</u>: formed with or joined to; and

<u>Adhered</u>: attached.

The Court need not construe the term <u>composite</u> and declines to do so.

In view of this Memorandum Opinion and Order, the Court hereby cancels the *Markman* hearing which had been tentatively scheduled for December 21, 2007. In the alternative, the Court will conduct a telephone conference with counsel on December 21, 2007 at 9:00 a.m. to set all further deadlines, including briefing deadlines for summary judgment motions on the merits, a discussion of whether there is interest in ADR, and a trial date. Counsel for the plaintiff shall arrange for the telephone call and shall join the Court once everyone is on the line.

IT IS SO ORDERED.

  December 14, 2007                          *s/ David D. Dowd, Jr.*
Date                                                       David D. Dowd, Jr.
                                                                  U.S. District Judge