DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Old Reliable Wholesale, Inc., ) | |
| ) | CASE NO. 5:06 CV 2389 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Cornell Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I. INTRODUCTION

In this patent infringement action, plaintiff Old Reliable Wholesale, Inc. (Old Reliable) alleges that certain products manufactured and/or sold by defendant Cornell Corporation (Cornell) infringe U.S. Patent No. 5,069,950 (the '950 Patent).[1] Cornell disputes that its products infringe the '950 Patent, and alleges that the '950 Patent is invalid. In their complaint and counterclaims, both parties seek attorney fees pursuant to 35 U.S.C. § 285.

The Court previously issued a Claims Construction Order, and established a discovery and dispositive motion schedule. Now pending before the Court are the parties' cross motions for summary judgment.[2]

---

[1] *See* Attachment 1.

[2] Old Reliable's motion for summary judgment (ECF 53), Cornell's response (ECF 61), Old Reliable's corrected reply (ECF 67).
   Cornell's motion for summary judgment (ECF 54), Old Reliable's response (ECF 59), Cornell's reply (ECF 62), Old Reliable's sur-reply (ECF 71), and Cornell's sur-surreply (ECF 74).

(5:06 CV 2389)

Plaintiff Old Reliable moves for summary judgment on the grounds that Cornell has infringed the '950 Patent. Defendant Cornell moves for summary judgment on the grounds that the '950 Patent is invalid pursuant to 35 U.S.C. §§ 102 and 103.

For the reasons contained herein, the Court concludes that the '950 Patent is invalid and Cornell's motion for summary judgment is GRANTED. Having found the '950 Patent invalid, plaintiff Old Reliable's motion for summary judgment is DENIED.

## II. FACTS

The parties do not dispute that plaintiff Old Reliable owns the '950 Patent. The application for this patent was filed on April 11, 1990, and the '950 Patent was issued on December 3, 1991.

The '950 Patent relates to an insulated roof board designed to allow air flow beneath the top layer. The air flow is achieved by a space, which consists of blocks configured to create channels, between an insulating bottom layer and a top layer .

Plaintiff's product using this invention is the AJC Inventsabord. Defendant Cornell sells insulated roofing products under the trade names Vent-Top ThermaCal 1 (V-T 1) and Vent-Top ThermaCal X1 (V-T X1). Old Reliable contends that these two products infringe the '950 Patent.

In addition to the allegedly infringing V-T 1 and V-T X1 insulated roofing panels, Cornell also sells another insulated roofing panel, Vent-Top ThermaCal 2 (V-T 2). Old Reliable does not allege that Cornell's V-T 2 product infringes the '950 Patent.

(5:06 CV 2389)

The parties do not dispute that V-T 2, USSR Patent SU775258 (Rozenblit Patent),[3] and the Air-Flo insulated roof panel by Branch River Foam Plastics (Air-Flo) pre-date the '950 Patent.[4] However, the parties do dispute whether V-T 2, Air-Flo and the Rozenblit Patent anticipate the '950 Patent, and whether the invention claimed in the '950 Patent was obvious.

### III. LAW AND ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure is appropriate when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law.[5] Summary judgment is as appropriate in a patent case as in any other. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835 (Fed. Cir. 1984). A critical factor in a motion for summary judgment in a patent case, as in non-patent cases, is the determination by the district court that is that there is no genuine issue of material fact in dispute. The party opposing the motion must point to an evidentiary conflict created on the record. The district court may not simply accept a party's statement that a fact is challenged, and mere denials or conclusory statements are insufficient. *Barmag Barmer,* 731 F.2d at 835-36 (citing *Union Carbide v. American Can Co.,* 724 F.2d 1567, 1571 (Fed. Cir. 1984)). Established facts and inferences drawn from such facts must be construed in a light most

---

[3] USSR Patent SU77258 by Rozenblit, dated October 30, 1980, is translated into English and attached to Cornell's motion for summary judgment. *See* ECF 54-42.

[4] However, Old Reliable does argues that Air-Flo did not feature cross-cut ventilation more than one year before the '950 Patent application date.

[5] *U.S. v. Diebold,* 369 U.S. 654 (1962); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

3

(5:06 CV 2389)

favorable to the opposing party. *Barmag Barmer,* 731 F.2d at 836 (citing *United States v. Diebold,* 369 U.S. 654, 655 (1962)).

**B.     35 U.S.C. §§ 102 and 103**

Defendant Cornell moves for summary judgment on the grounds that the '950 Patent is invalid under 35 U.S.C. §§ 102(b), (g) and 103.

**1.     35 U.S.C. § 102**

35 U.S.C. § 102 provides in relevant part:

> A person shall be entitled to a patent unless-
> . . . .
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for the patent in the United States,
> . . . .
> (g)(2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.
> . . . .

If the claimed invention was patented, or described in a printed publication or in public use or on sale more than a year before the date of the application for the patent, then that prior art "anticipates" the patent. *See Finisar Corp. v. DirectTV Group, Inc.,* 523 F.3d 1323, 1334 (Fed. Cir. 2008) (35 U.S.C. § 102(b)).[6] Similarly, if the claimed invention was made by a prior inventor who did not abandon, conceal or suppress the invention, then that prior invention "anticipates" the patent. *See Z4 Technologies, Inc. v. Microsoft Corp.,* 507 F.3d 1340. 1352

---

[6] The application date for the '950 Patent was April 11, 1990, so the description in a printed publication, public use, or sale of the prior art must occur prior to April 11, 1989 (the Critical Date) in order to anticipate the '950 Patent under § 102(b).

(5:06 CV 2389)

(Fed. Cir. 2008) (35 U.S.C. § 102(g)(2)). If the prior art or prior invention anticipates a patent, then the patent is invalid under § 102.

Anticipation means that the claimed invention was previously known. To anticipate the patent, a single prior art reference must contain or describe every element of the claimed invention, either expressly or inherently. *See Advanced Display Systems, Inc. v. Kent State University,* 212 F.3d 1272, 1282 (Fed. Cir. 2000). A prior art reference may anticipate without disclosing a feature of a claimed invention if that feature is necessarily present, or inherent, in an anticipating reference. *Schering Corp. v. Geneva Pharmaceuticals, Inc.,* 339 F.3d 1373, 1377-79 (Fed. Cir. 2003); *Atlas Powder Co. v. Ireco, Inc.* 190 F.3d 1342, 1347 (Fed. Cir. 1999).

Anticipation is a question of fact, which may be resolved on summary judgment if there is no genuine issue of material fact. *Zenith Electronics Corp. v. PDI Communication Systems, Inc.,* 522 F.3d 1348, 1356-57 (Fed. Cir. 2008) (citing *Gen. Elec. Co. v. Nintendo Co., Ltd.,* 179 F.3d 1350, 1353 (Fed. Cir. 1999); *Trintec Indus., Inc. v. Top-U.S.A. Corp.,* 295 F.3d 1292, 1294 (Fed. Cir. 2002)). Summary judgment is appropriate if no reasonable jury could find that the patent was not anticipated by the prior art. *Id.*

**2.     35 U.S.C. § 103**

35 U.S.C. § 103 provides in relevant part:

> § 103. Conditions for patentability; non-obvious subject matter
>
> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

5

(5:06 CV 2389)

In order to be patentable, a claimed invention must be "non-obvious." A patent is invalid under § 103 if the difference between the prior art and the claimed invention is such that "the subject matter as a whole would have been obvious at the time to a person skilled in the art." *Graham v. John Deere Co.,* 383 U.S. 1, 15 (1966).

**C.      Claims Construction Order**

The Court previously construed the term "integral" in claim 1 of the '950 Patent. *See* ECF 37. The Court's Claims Construction Order construed "integral" to mean that the spaced blocks are "formed with or joined to" the rigid insulating material, and need not be carved out of the insulating material, but may be "formed separately and attached."

**D.      The '950 Patent was Anticipated**

**1.      V-T 2 Anticipates the '950 Patent**

Cornell contends that its V-T 2 insulated roof board introduced in 1986, long before the Critical Date, contains every element of the '950 Patent, and that the only difference between V-T 2 and the allegedly infringing insulated roof board, V-T 1, is the oriented strand board[7] (OSB).

Old Reliable does not allege that V-T 2 infringes the '950 Patent. Old Reliable does not dispute that V-T 2 was in printed publication, in public use or on sale before the Critical Date, or contend that V-T 2 was abandoned, suppressed or concealed. However, Old Reliable argues that V-T 2 does not anticipate the '950 Patent because, as a result of the presence of the OSB in

---

[7] Oriented strand board is wooden panel produced by a manufacturing process and resin that binds strands of wood together and may be used as an alternative to plywood. In this case, the parties also use the term "waferboard." The parties do not dispute that the oriented strand board is 7/16 of an inch in thickness.

6

(5:06 CV 2389)

V-T 2, the spacer blocks are not integral with the insulating material as claimed by the '950 Patent.

The issue of anticipation centers around claim 1 of the '950 Patent. All of the other claims are dependent on claim 1. Claim 1 of the '950 Patent states as follows:

> 1. A composite insulated roof board structure comprising:
>
>> (a) an insulated roof board member comprising (1) a main portion of a rigid coherent solid insulating material, and (2) a top portion comprising a plurality of spaced blocks above said main portion and integral therewith, said blocks defining therebetween a network of interconnected channels at the same level for horizontal venting of water vapor; and
>>
>> (b) a relatively hard, dense protective top layer which is adhered to the tops of the blocks of said insulated roof board member.

Since the parties do not dispute that V-T 2 pre-dates the '950 Patent, the next consideration for the Court is whether the V-T 2 insulated roof board contains every element of claim 1. The Court finds that there is no genuine issue of material fact that the V-T 2 insulated roof board anticipates the '950 Patent.

Cornell's insulated roof board V-T 2 basically consists of insulation, an OSB, spacer blocks, and a top layer. Old Reliable does not contend that Cornell's V-T 2 infringes the '950 Patent. Cornell's insulated roof board V-T 1 basically consists of insulation, a felt facer, spacer blocks, and a top layer. Old Reliable contends that V-T 1 does infringe the '950 Patent. According to Old Reliable, the difference is that V-T 2 has an OSB and V-T 1 does not.

Old Reliable's argument that V-T 2 does not anticipate the '950 Patent centers on the OSB. The essence of plaintiff's argument is that the spacer blocks attach to the OSB and not the "main portion of rigid coherent solid insulating material," and therefore does not contain the

7

(5:06 CV 2389)

required element of claim 1 that the blocks are "integral" with the "main portion." Even though there is a felt facer between the blocks and the insulating material in Cornell's V-T 1, Old Reliable argues that unlike the OSB, the felt facer is part of the "main portion" to which the spacer blocks are integral therewith, and therefore V-T 1 infringes the '950 Patent. Old Reliable arrives at this distinction by reasoning that unlike felt facing, which is flexible, the OSB is inflexible and a separate structural component that does not "conform to and form part" of the insulating material.

The parties do not dispute that in manufacturing V-T 2, the insulating material is foamed directly onto the OSB.[8] Cornell's marketing material prior to the Critical Date advertised the OSB or waferboard as "integrally bonded" to the foam material.[9] According to plaintiff's expert, Dr. Rice, the insulating material becomes an "integral part" of whatever it sticks to or touches during the foaming process.[10] The foaming process in the manufacture of V-T 1 is essentially the same as V-T 2. According to plaintiff's expert, the felt facer in V-T 1 becomes integrally bonded with the foam.[11]

Based on the testimony of plaintiff's expert, the Court concludes that there is no genuine issue of material fact that both the felt facer in V-T 1, and the OSB in V-T 2, become an

---

[8] ECF 54-60, p. 101.

[9] ECF 54-17, p. 2 of 4.

[10] ECF 54-60, p. 98.

[11] ECF 54-60. pp. 97-98

8

(5:06 CV 2389)

"integral part" of the insulating material in the foaming process.  As an integral part of the insulating material, the OSB "conforms to and forms part of" the insulating material.

With respect to the felt facer in V-T 1, plaintiff's expert concludes that at the end of the foaming process, the felt facer is part of the "main portion" of insulating material to which the spacer blocks are joined.[12]  Despite being integrally bonded to the insulated material in the same foaming process, however, plaintiff's expert maintains that the OSB in V-T 2 does not become part of the "main portion" of the insulating material because, unlike the felt facing, OSB is an inflexible separate structural component that changes the overall structure.[13]

The Court previously construed "integral" in claim 1 to mean " formed with or joined to."  In construing this term, the Court determined that the spacer blocks need not be carved out of the insulation, but could be formed separately and attached, or "joined to."

Plaintiff cannot and does not argue that claim 1 of the '950 Patent requires the spacer blocks to be <u>directly</u> attached to the insulating material because in the case of the allegedly infringing V-T 1, the blocks are in direct contact with the felt facer, not the insulating foam.  In V-T 2, the blocks are in direct contact with the OSB, not the insulating foam.  Nevertheless, Old Reliable argues that V-T 1 infringes the '950 Patent but V-T 2 does not anticipate the '950 Patent.  In making this distinction, Old Reliable reasons that the foaming process renders the felt facer part of the "main portion" to which the spacer blocks "joined to."  Therefore, V-T 1

---

[12] ECF 54-60, pp.102-103.

[13] *Id.*

9

(5:06 CV 2389)

infringes the '950 Patent.  However, Old Reliable concludes that the foaming process does not render the OSB part of the "main portion" to which the spacer blocks are "joined to," therefore V-T 2 neither infringes nor anticipates the '950 Patent.

Old Reliable's self-serving conclusion in this regard is not supported by the testimony of its own expert or other evidence in the record, and is a difference without a distinction.  There is no genuine issue of material fact in dispute that both the felt facer and the OSB become an "integral part" of the insulating material in the foaming process.  In both V-T 1 and V-T 2, the blocks are not in direct contact with insulating foam but are "joined to" the insulating material through an intervening layer which is not insulation.  The flexibility of felt versus the inflexibility of OSB is not relevant as to whether the spacer blocks are "joined to" the insulating material.  In fact, claim 1 describes the "main portion" as being "rigid," and there is no requirement in the claim that material which becomes an integral part of the insulating foam in the foaming process, therefore part of the "main portion," be flexible.

In this case, Old Reliable is trying to have it both ways in order to preserve its infringement claim against V-T 1 and avoid invalidating the '950 Patent based on the prior art of V-T 2.  Conclusory arguments based on inconsistent positions taken by plaintiff are insufficient to overcome the evidence in the record that the OSB is an integral part of the foam insulation in the V-T 2 roof board that is part of the "main portion" in the same manner as the felt facer in V-T 1, and that the spacing blocks in V-T 2 are joined to the insulating material as provided in claim 1 of the '950 Patent.  The record also establishes that V-T 2 is comprised of a top

10

(5:06 CV 2389)

protective layer, and anticipates the horizontal venting element of claim 1.[14] The remaining claims of the '950 Patent are dependent on the validity of claim 1. Based on the evidence in the record there are no material facts in dispute that all of the elements of claim 1 are present in V-T 2, and no reasonable jury could find that V-T 2 does not anticipate the '950 Patent.

### 2. Branch River Air-Flo Anticipates the '950 Patent

Plaintiff's expert, Dr. Rice, stated in his deposition that if Air-Flo had cross-ventilation channels, that prior art would anticipate the '950 Patent.[15] Therefore the question before the Court as to the anticipation of the '950 Patent by Air-Flo is whether Air-Flo was described in a printed publication or in public use or on sale with cross-cut ventilation before the Critical Date.

Cornell has provided an advertisement regarding Air-Flo attached to a letter dated March 23, 1987, well before the Critical Date, from the president of Branch River, the manufacturer of Air-Flo. That advertisement states that ventilation can be provided "in either direction to suit your particular project."[16] According to Richard Dauphinais, a Branch River employee during the relevant time period, that language meant that the ventilation in the Air-Flo panel could be provided across the roof, from the eve to the peak of the roof, or in both directions in the same panel.[17] Further, although unable to recollect an exact date, Mr. Dauphinais testified that such a cross-cut customer order for Air-Flo was filled "not too long"

---

[14] ECF 54-6 and 54-17.

[15] ECF 54-56, pp. 158-59.

[16] ECF 54-20,

[17] ECF 54-55, p. 56.

11

(5:06 CV 2389)

after he began working for Branch River in 1986, and later testified the cross-cut order was filled before July 6, 1988.[18]

Old Reliable offers no evidence to the contrary that cross-cut ventilation by Air-Flo was advertised and in use more than one year before the '950 Patent application date, but simply argues that Cornell's evidence of anticipation of the '950 Patent by Air-Flo is hypothetical and uncorroborated.  However, Mr. Dauphinais' interpretation of the catalogue language and the specifications of a customer's cross-cut order are consistent with each other and there is no doubt that the catalogue advertisement, if not the cross-cut order, occurred before the Critical Date.  Old Reliable introduces no contrary evidence, and its arguments alone are insufficient to create a genuine issue of material fact that Air-Flo anticipated the '950 Patent.  Based on the evidence in the record, no reasonable jury could find that Air-Flo does not anticipate the '950 Patent.

There is no genuine issue of material fact in dispute that both V-T 2 and Air-Flo anticipate the '950 Patent, and no reasonable jury could find that both V-T 2 and Air-Flo do not anticipate the '950 Patent under § 102.[19] Therefore, the Court finds as a matter of law that both V-T 2 and Air-Flo anticipate the '950 Patent, rendering the '950 Patent invalid under § 102.

Accordingly, defendant's motion for summary judgment invalidating the '950 Patent is granted.

---

[18] ECF 54-55, pp. 57, 63.

[19] The parties in this case do not agree on the English translation of the Rozenblit Patent, which was also argued by Cornell to anticipate the '950 Patent.  However, having concluded as a matter of law that V-T 2 and Air-Flo anticipate the '950 Patent, the Court need not consider whether the Rozenblit Patent anticipates the '950 Patent, and renders no decision on that issue in this Memorandum Opinion.

(5:06 CV 2389)

### E.     The '950 Patent was Obvious

A patent is invalid for obviousness if the difference between the claimed invention, and what was known at the time by two or more prior art references, is not sufficiently great to warrant a patent.  35 U.S.C. § 103(a).  "Anticipation is the epitome of obviousness," and prior art disclosures that anticipate a patent also renders it invalid for obviousness.  *See Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1357 fn. 21 (Fed. Cir. 1998) (citing *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1548 (Fed. Cir. 1983)).

The Court has ruled that the '950 Patent was anticipated by both V-T 2 and Air-Flo, and therefore invalid under 35 U.S.C. § 102.  Accordingly, the Court finds that '950 Patent is also invalid for obviousness under § 103.[20]

## IV.  CONCLUSION

For the reasons contained herein, the Court finds that there are no genuine issues of material fact in dispute as to the validity of the '950 Patent and that no reasonable jury could find that the '950 Patent was not anticipated by the prior art.  Accordingly, Cornell's motion for summary judgment (ECF 54) that the '950 Patent is invalid pursuant to 35 U.S.C. §§ 102 and 103 is GRANTED.

The Court has determined as a matter of law that the '950 Patent is invalid.  Accordingly, Old Reliable's motion for summary judgment (ECF 53) that defendant infringed the '950 Patent is DENIED.

---

[20] Old Reliable argues that Cornell should be estopped from arguing obviousness because Cornell's arguments are allegedly inconsistent with arguments previously made before the Patent Office in connection with a patent application.  However, the Court's determination of obviousness is based on its finding of anticipation, therefor the estoppel issue need not be addressed in this case.

13

(5:06 CV 2389)

The Court will publish a separate Judgment Entry.

## V.  ATTORNEY FEES

In its counterclaims against Old Reliable, Cornell sought attorney fees pursuant to 35 U.S.C. § 285.  *See* ECF 8.  Section 285 gives the Court discretion to award attorney fees to prevailing parties "in exceptional cases."  The issue of attorney fees has not been briefed.

If Cornell desires to pursue attorney fees, a brief in support of a fee award should be filed by April 17, 2009.  Old Reliable may respond by May 1, 2009, and Cornell may reply by May 8, 2009.

IT IS SO ORDERED.

| | |
|---|---|
| March 24, 2009 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |