DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Old Reliable Wholesale, Inc., | ) | |
| | ) | CASE NO. 5:06 CV 2389 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| Cornell Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

The Court previously granted defendant Cornell Corporation's ("Cornell") motion for summary judgment that the patent at issue in this infringement action is invalid and entered judgment in favor of Cornell. *See* ECF 75 and 76. Cornell subsequently filed a motion for attorney fees and to amend the Court's judgment to include an award of attorney fees. ECF 79. Old Reliable Wholesale ("ORW") opposed the motion (ECF 85) and Cornell replied (ECF 86). For the reasons discussed below, Cornell's motion for an award of attorney fees is granted in part and denied in part, as detailed below.

## II. FACTS

This case involves a demand for attorney fees from defendant Cornell, a Wisconsin ventilated roof insulation maker that was required to defend itself against allegations it infringed on ORW's patent of another roof insulation product, Inventsaboard.

The relevant parts of the abstract to ORW's patent, U.S. Patent No. 5,069,950 (the "'950 patent") described the Inventsaboard as, "(a)n insulated roof board member comprising (1) a main portion of a rigid coherent solid insulating material, and (2) a top portion comprising a

(5:06 CV 2389)

plurality of spaced blocks above said main portion and integral therewith, said blocks defining therebetween a network of interconnected channels at the same level for horizontal venting of water vapor . . . ."(emphasis added.)[1]

Defendant Cornell's product, VentTop ThermaCal 2 ("VT- 2") predated the '950 patent. It consisted of insulation, an OSB panel,[2] spacer blocks and a top layer. A third product, the Branch River Air-Flo, also predated the '950 patent. It consisted of features similar to VT-2 and the '950 patent. The issue of its cross-ventilation capabilities was disputed.

Cornell also manufactured the Vent Top Thermacal 1 ("VT-1"). It was essentially the same as the VT-2 except in the place of the second OSB panel, found in the VT-2, was a felt facer to contain the foaming insulation.

Counsel for ORW, R. Eric Gaum ("Gaum") initiated this matter through a July 10, 2006 letter instructing the Cornell Corporation to obtain a license to continue selling the Vent-Top ThermaCal roofing board.[3] ECF 85-5. Cornell disagreed, indicating in a July 28, 2006 letter from company president Michael T. Coughlin that Cornell had been "verifiably producing ventilated roof insulation under our trademarked name Vent-Top ThermaCal ® since 1987, well before your client even applied for a patent." Coughlin informed Gaum further that Cornell's application for a patent on its product in 1988 was denied based on "several other patents that existed since the early 1960s." ECF 79-3.

---

[1] U.S. Patent No. 5,069,950, filed on April 11, 1990. ECF 1-1.

[2] OSB is oriented strand board; a manufactured wood strand and resin paneling.

[3] This was the previous name of the VT-1.

(5:06 CV 2389)

On October 3, 2006, ORW filed the infringement lawsuit and counsel for both parties exchanged multiple letters supporting their positions.[4] On January 30, 2007, ORW served Cornell with a summons and complaint. ECF 6.

On February 12, 2007, Huusko sent Gaum a letter and documents in "attempt to resolve this matter before the costs of litigation become exorbitant." ECF 79-7. In the letter, Huusko enclosed documents that showed that other companies had been using insulated roof board, like that claimed in the '950 patent, more than a year prior to April 11, 1990.[5] Huusko explained:

> The single-board feature of the '950 patent was well known and practiced in the art more than one year prior to the filing date of the '950 patent, and thus, is not a valid and enforceable claim component. Further, the [U.S. Patent No. 4,635,419 by Forrest, et al, issued January 13, 1987] '419 patent by Forrest, as well as Cornell's products, disclosed and practiced the cross-ventilation feature claimed

---

[4]On October 19, 2006, Cornell's counsel Gary Huusko ("Huusko") sent Gaum a claim-by-claim comparison of Cornell's pre-1991 products to the '950 patent's Inventsaboard and explained that Cornell products anticipated ORW's patent. ECF 79-6. Guam argued in a January 26, 2007 letter that none of Cornell's allegedly anticipating products taught horizontal airflow and the VT-2 had a structure so different from the Inventsaboard that it could not be called prior art. Specifically, Gaum said that the "Cornell VT-2 product was comprised from bottom to top of foam, waferboard, wood spacer blocks, and then another waferboard" and that the configuration in the '950 patent did not have "the addition of a waferboard between the foam and the spacer blocks." Guam stated that the accused product was Cornell's VT-1, which did not include a waferboard between the foam and the spacer blocks." ECF 85-9.

[5]The following were included in the letter: a 1987 letter from Branch River Foam Plastics, Inc. to Cornell showing that the Air-Flo was substantially similar to the '950 patent in that the "integral channels can be provided in either direction;" installation instructions from 1987/88 for the Vent-Top ThermaCal demonstrating the use of wooden spacer blocks to provide air flow ventilation; an opinion letter from 1993 from Cornell's counsel Gregory Sebald advising that it's proposed single-board panels (VT-1 and X1) would not literally infringe patent '950 or infringe under the Doctrine of Equivalents due to prior art and the patent's file history; and, copies of three patents which predated the '950 and disclosed single-board insulating panels. ECF 79-7, pp. 2-3.

3

(5:06 CV 2389)

>in the '950 patent more than one year prior to the filing date of the '950 patent, and thus, that feature likewise is not a valid and enforceable claim component.

ECF 79-7, p. 3 (emphasis added).

Although Huusko articulated the "strength of Cornell's defenses against the infringement claims" he concluded the letter with an offer of settlement. ECF 79-7, pp. 3-4.

On September 25, 2007, Cornell's counsel Matthew J. Schaap ("Schaap") deposed ORW's CEO (and son of the Inventsaboard inventor) Anthony Crookston, III ("Crookston, III"). Part of the deposition focused on cross-ventilation. Schaap showed Crookston, III four roofing systems; a sample of Cornell's 1988 roofing system,[6] Cornell's "ThermaCal X,"[7] Cornell's V-T ThermaCal 1,[8] and the "Inventsaboard."[9] Crookston, III testified that all allowed cross-ventilation[10] and that the cross-ventilation in the Inventsaboard was essentially the same as that in the exhibits he was shown.[11]

On September 26, 2007, Schaap deposed ORW founder and Inventsaboard inventor Anthony Crookston, Jr ("Crookston, Jr."). Crookston, Jr. agreed that the Branch River Air-Flo

---

[6] Labeled "Exhibit 30." ECF 54-56, p. 35.

[7] Labeled "Exhibit 31." ECF 54-56, p. 35.

[8] Labeled "Exhibit 32." ECF 54-56, p. 34.

[9] Labeled "Exhibit 33." ECF 54-56, p. 36.

[10] ECF 54-56, pp. 35-36.

[11] ECF 54-56, p. 37.

(5:06 CV 2389)

product was almost identical to the Inventsaboard product.[12] Schaap also asked Crookston, Jr. to compare the four roofing systems marked in his son's (Crookston, III) deposition. Anthony Crookston, Jr. stated that all four allowed cross-ventilation, [13] and that they, "all do the same thing. Exactly the same thing."[14]

On March 3, 2008, Schaap took the deposition of plaintiff's expert James Rice, PhD. Part of the deposition focused on the two-board versus the single-board roofing structure. Rice testified that he would consider the felt facing [15] to be part of the "main portion" of the '950 patent. Schaap asked whether the felt facing served the same purpose as two boards[16] would in the foaming process and Rice agreed. Specifically, he testified:

> Q: Talking in terms of what the felt facing is you would agree that if the polyiso was foamed between two boards, those boards would essentially provide the same effect as a felt facer in a manufacturing process, basically a stopping point for the foam?
> A: I assume it could be used for that, yes.
> Q: When I say boards, I mean OSB, but that could mean a layer of fiberglass board, some other type of board . . .
> \* \* \* \*
> Q: To stop the foam from rising or to prevent the foam from expanding infinitely?
> A: Some sort of barrier, yeah, that – well, you weren't concerned about it sticking or adhering to.
> Q: Because it's going to stick or adhere to pretty much whatever it touches; right?
> A: Yeah.
> Q: During the foaming process?

---

[12]ECF 54-57, p. 19.

[13]ECF 54-58, p. 7.

[14]ECF 54-58, p. 8.

[15]The single-board VT-1's felt facing was integral with the spaced blocks.

[16]The two-board VT-2's OSB was integral with the spaced blocks.

5

(5:06 CV 2389)

        A:    Yes.
        Q:    And it's going to become an integral part with whatever it sticks to or touches during that foaming process; is that fair to say?
        A:    That's fair to say.

ECF 54-59, pp. 14-15. (emphasis added).

On March 24, 2009, this Court issued its opinion that, pursuant to 35 U.S.C. §§ 102 and 103, the VT- 2 anticipated the '950 patent, rendering it invalid, and that the VT-1 did not infringe the patent. See ECF 75.

### III.  LAW AND ANALYSIS

According to 35 U.S.C. § 285, "[T]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  In this case, Cornell is the prevailing party.  ECF 75. Next, the Court must analyze whether the case is exceptional, whether fees are warranted, and, if so, what fee is reasonable.

#### A. The Case is Exceptional

"The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in its discretion whether an award of attorney fees is justified, a determination that [the Court of Appeals] review[s] for an abuse of discretion." *Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed.Cir. 2007) (*citing Cybor Corp. v. FAS Techs.,* 138 F.3d 1448, 1460 (Fed.Cir. 1998)); *Stephens v. Tech International, Inc.*, 393 F.3d 1269, 1273 (Fed.Cir. 2004). " . . . [C]lear and convincing evidence

6

(5:06 CV 2389)

that a plaintiff has brought a baseless or frivolous suit against an accused infringer . . . " requires a district court to deem the case exceptional. *Diego, Inc. v. Audible, Inc.,* 505 F.3d at 1367.[17]

A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless. *Diego, Inc.* at 1369 (*citing Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 ( Fed.Cir. 1993); *See Stephens v. Tech International, Inc.*, 393 F.3d at 1273-74. Filing *and maintaining* an infringement suit which the patentee knows, or on reasonable investigation, should know is baseless is also grounds for declaring it exceptional. *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 810 (Fed.Cir. 1990) (*citing Eltech Systems Corp. v. PPG Industries, Inc.,* 710 F.Supp. 622, 636 (W.D. La. 1988)); *Modine Manufacturing Co. v. Allen Group, Inc.,* 917 F.2d 538, 543 (Fed.Cir. 1990) (internal citations omitted).

Cornell asserts that ORW's lawsuit was unjustified at its inception because ORW was aware of invalidating prior art before it filed suit. Additionally, Cornell argues that the lawsuit was unjustified once Cornell provided ORW with detailed drawings of cross-ventilation and single-board prior art on February 12, 2007. Cornell argues that by that time, ORW had conclusive evidence that the '950 patent was invalid for obviousness and its claims were frivolous. Cornell asserts that ORW could not reasonably assert a cross-vent argument as to the VT-2 since it did not lack that feature, as supported by the Crookston, Jr. September 26, 2007

---

[17]*See Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1329-30 (Fed.Cir. 2003) (imposing attorney fees under § 285 requires "vexatious, unjustified, or frivolous litigation.")

7

(5:06 CV 2389)

deposition testimony wherein, comparing the VT-2, the VT-1, and the Inventsaboard, side by side, Crookston, Jr. said they all did exactly the same thing.[18]

ORW argues that Cornell is not alleging misconduct and must therefore demonstrate by clear and convincing evidence that the litigation was brought in subjective bad faith and was objectively baseless.  Under that analysis, ORW asserts that it had a good faith belief in the validity of the suit at the time it was filed based on a review of its '950 patent, its prosecution history, and a sample of the VT-1.  ORW maintains that it believed, based on this information, that the VT-1 infringed and that neither the VT-2 nor the Branch River Air-Flo product was prior art.  ORW does not address the basis upon which it maintained its good faith belief at later stages of discovery.

This Court has reviewed multiple documents to assess whether there was a sound basis for this lawsuit, including illustrations of the '950 Inventsaboard, the VT-1, VT-2, and the Branch River product, and deposition transcripts of pertinent witnesses.  The Court has considered two dates upon which ORW was presented with evidence that prior art anticipated its patent.  The first, the February 12, 2007 letter, strongly suggested that previous roofing systems were invalidating prior art.  The second, the September 26, 2007 concession of the inventor, confirmed it. The Court has determined that the case became exceptional after the '950 patent's inventor admitted in deposition that the VT-2, VT-1 and his Inventsaboard all did the same thing as his invention.

---

[18]ECF 86, p. 5.

(5:06 CV 2389)

On February 12, 2007, Cornell's extensive letter enclosed drawings and brochures of products showing cross-venting and a single-board construction prior to the critical date.[19] The VT-2 had cross-venting and the Branch River Air-Flo had single-board construction. These put ORW on notice of potentially invalidating prior art.

Despite this evidence, ORW maintained its belief that the extra load-bearing capability of the extra board in the VT-2 distinguished it from the '950 patent. ECF 85, pp. 12-13.

The Court acknowledges the possibility that, even after the February 2007 letter, ORW had some basis to assert its Inventsaboard had not been anticipated. Although weak, the Court will allow that ORW had some basis to maintain its position that technicalities of cross-venting and load-bearing distinguished its Inventsaboard.

Thereafter, however, on September 26, 2007, Crookston, Jr.'s testimony rendered technical arguments essentially irrelevant. When the product inventor acknowledged that the roofing samples at issue did "*exactly* the same thing" it was apparent that its patent was anticipated and any further action against Cornell for infringement was baseless.[20]  ORW should have dismissed the matter then. Maintenance of the lawsuit thereafter was improper and unjustified and to continue warranted a finding of an exceptional case. *Diego* at 1367; *Eltech* at 811.

---

[19]ECF 79-7.

[20]On March 3, 2008, plaintiff's expert James Rice, PhD, conceded that felt facer of the accused VT-1 product was "integral with" the spaced block just as the OSB of the non-infringing VT-2 was "integral with" the spaced blocks. This rendered the presence of the board in the VT-2 irrelevant making it invalidating prior art. Pursuing the infringement suit after this evidence is further evidence of ORW's bad faith.

9

(5:06 CV 2389)

### B. Attorney Fees are Justified and Warranted

The second part of the attorney fees analysis focuses on whether the fees are justified. The trial judge is in the best position to weigh considerations such as "closeness of the case, the tactics of counsel, the conduct of parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *Modine Manufacturing Co. v. Allen Group, Inc.,* 917 F.2d 538, 543 (1990) (internal citations omitted). The court must weigh factors such as degree of culpability, closeness of the questions, and litigation behavior. *Nilssen v. Osram Sylvania, Inc*., 528 F.3d 1352, 1358-59 (Fed.Cir. 2008).

Cornell argues that the suit was unjustified from the time it was filed, because ORW was aware of invalidating prior art, and continued to be unjustified as there was no basis for maintaining the suit once the VT-2, Branch River Air-Flo and other prior art were disclosed during discovery. Cornell asserts that maintaining the litigation thereafter was reckless, cost Cornell significant, unnecessary expense, and was the type of carelessness and bad faith that 35 U.S.C. § 285 intended to discourage. Cornell asserts further that Crookston, Jr's concession during his September 26, 2007 deposition that the VT-2, VT-1, and the AJC Inventsaboard "[A]ll do the same thing. Exactly the same thing" and concessions at expert James Rice's March 2008 deposition[21] all served as evidence of invalidity and ORW's decision to pursue the case thereafter was unjustified and in bad faith. ECF 86, pp. 5-6.

---

[21]Specifically, that Rice admitted that if the 1987 Branch River Air-Flo product had been made with cross-channels it would have invalidated the '950 patent.

10

(5:06 CV 2389)

ORW did not argue whether the fees were justified.[22]

The arguments set forth by Cornell are well taken. Already aware of a body of potentially invalidating prior art in February 2007, it would have been reasonable for ORW to dismiss the lawsuit then. However, after inventor Crookston, Jr's concession September 26, 2007 deposition, the case should have been dismissed. Once Crookston admitted that prior art did the "same thing" as his invention, the case was no longer a close one and this Court looks at the "closeness of the case" when determining justification of fees. *Modine* at 543.

The Court also considers the tactics of counsel. *Id.* Despite considerable evidence that it had not infringed, Cornell's February 12, 2007 letter also included an offer of settlement. There is no evidence ORW entertained negotiations. These divergent tactics, commendable on Cornell's behalf, support an award of fees under *Modine*. For these reasons, the Court finds that an award of attorney fees is warranted and justified.

### C. The Fees are Reasonable

Once a party is deemed entitled to fees, the Court must determine what fee is reasonable.[23] "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate [which] . . . provides an objective basis on which to make an initial estimate of the value of a

---

[22]ORW argued only that it committed no litigation misconduct and thus the court should use the standard set forth in *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). The *Brooks* case has no application where, as here, there has been a finding of litigation misconduct. See discussion *infra*.

[23]The Court's award of attorney fees to Cornell is against Old Reliable Wholesale *only*. The Court does not award the fee against counsel for ORW and finds no basis for an award against ORW lawyers.

11

(5:06 CV 2389)

lawyer's services." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  This calculation, known as "lodestar," serves as "the fairest and most manageable approach to determine an award of attorney fees*." Pirolozzi v. Stanbro*, No.5:07-CV-798, *2 (N.D. Ohio Oct. 29, 2009) (*citing Hensley v. Eckerhart* at 433) (internal citations omitted). *See also Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1275, 1284 (N.D. Ohio 1985) ("lodestar" is appropriate starting point in calculating fees for attorneys challenging constitutionality of Akron, Ohio abortion ordinance.)  While determining the appropriate market rate is inherently difficult, because the types of services rendered by lawyers, as well as their experience, skill and reputation, vary extensively, a rate determined in this way is normally deemed to be reasonable. *Blum v. Stenson*, 465 U.S. 886, 896, n. 11 (1984).

The moving party must submit evidence supporting the hours worked and the rates claimed.  *Pirolozzi* at *2 (citing *Hensley v. Eckerhart,* 461 U.S. at 433).  Attorneys with distinctive knowledge or specialized skill, like patent litigation, often command higher billing rates than those engaged in general practice.  *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

Using these standards, the Court turns now to a calculation of a proper award of attorney fees and costs.[24]  Specifically itemized, Cornell seeks reimbursement for a total of $236,345.44 in attorney fees billed by Severson Sheldon in this matter.  ECF 79-17, ECF 80.  Cornell seeks

---

[24]The defendant's application was filed after the court granted summary judgment but before the unsuccessful appeal by the plaintiff to the Federal Circuit.  Thus, the application of the defendant does not request an additional fee award for successfully defending this court's grant of summary judgment.

12

(5:06 CV 2389)

an award of attorney fees of $6,295.46 billed by Brouse McDowell in this matter.  ECF 79-4.[25]  Cornell also seeks reimbursements for $4,886.54 in additional attorney travel and out-of-pocket expenses.  ECF 79-16.  In total, Cornell requests judgment in the amount of $247,294.48 for its reasonable attorneys' fees in this case.  ECF 79-1, p. 12.

Lead counsel for the defendant is the law firm of Severson, Sheldon, Dougherty and Molenda, P.A. located in Apple Valley, Minnesota.  In support of the attorney fee application as above summarized, Cornell submitted the declaration of Severson Sheldon counsel Gary Huusko.  Huusko stated that the amount is reasonable based on his 26 years as an attorney and 11 years as a patent lawyer.  ECF 79-5.  Cornell also submitted the declaration of Severson Sheldon counsel Matthew Schaap, who stated that the fees and expenses are correct, appropriate and reasonable.  ECF 79-10.  Finally, Cornell submitted Severson Sheldon's invoices to Cornell from October 5, 2006 until March 30, 2009.  These are set forth under seal.  ECF 80.  The invoices are complete and number sixty-four pages.

As the Court has decided that only the fees charged after September 27, 2007 are recoverable, the Court has devoted considerable time in determining the total fees charged after that date and concludes that the recoverable fees total $187,518.72, less the amount of costs included in the fee bills in the total sum of $10, 526.97, for a net amount of $176, 991.75.  In

---

[25] The Brouse McDowell fee bills are set forth in ECF 79-4, numbering fifty-three pages.  The Court finds that the Brouse McDowell fee bills prior to September 27, 2007 totaled $4,656.64 and the fee bills after September 27, 2007 totaled $1,638.82.  Thus, the award of attorney fees shall include the sum of $1,638.82 for allowable fees for which judgment will be granted.

(5:06 CV 2389)

addition, the Court approves defendant's request for reimbursement of travel costs and out-of-pocket expenses in the sum of $4,886.54.[26]

The invoices submitted to the defendant by the law firm of Severson, Sheldon, Dougherty and Molenda also demonstrate that the law firm followed the practice of granting discounts in its bills which total approximately $50,000.  On several of the invoices, a charge for late payment was included.  Due to the large discount, the net amount of $176,991.75 includes the carrying charges.  The Court also notes that the defendant has not sought recovery for the attorney fees in submitting the application for attorney fees nor has the defendant sought as award of interest.

Finally, the Court finds that the amount of attorney fees sought is reasonable, from the standpoint of the time devoted to defending the defendant, and the hourly rates sought are likewise reasonable ("lodestar").  *Hensley v. Eckerhart,* 461 U.S. at 433; *Pirolozzi v. Stanbro*, No. 5:07-CV-798, at *2.

### D. The Bill of Costs is Appropriate

The Court next addresses Cornell's Bill of Costs and finds Cornell is entitled to costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1923.  "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorneys' fees - should be allowed to the prevailing party."  Fed. R. Civ. P. 54 (d)(1).  Further, 28 U.S.C. §1920 states, in relevant part, as follows:

---

[26]In approving the fee request in the sum of $187, 518.72 for the law firm of Severson, Sheldon, Dougherty and Molenda, the Court notes that the law firm listed billed attorney fees in the sum of $6,770 which it does not claim, as indicated on ECF 79-15.

14

(5:06 CV 2389)

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; . . . [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Court may exercise broad discretion when interpreting the provisions of 28 U.S.C. § 1920.  *BDT Products, Inc. v. Lexmark Intern'l, Inc.*, 405 F.3d 415, 419 (6th Cir. 2005).

The defendant has submitted a bill of costs in the sum of $13,111.53 which the Court approves.

### IV. CONCLUSION

Judgment will be entered for the defendant and against the plaintiff for the total sum of $196,628.64 which includes fees for Brouse McDowell in the sum of $1,638.82, plus attorney fees in the sum of $176,991.75 for fees for Severson, Sheldon, Dougherty and Molenda, $4,886.54 for travel expenses and out of pocket expenses incurred by Severson, Sheldon, Dougherty and Molenda, and costs in the sum of $13,111.53.

IT IS SO ORDERED.

| | |
|---|---|
| February 2, 2010 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |